HAMLIN, Justice:
Certiorari was directed to the Court of Appeal for review of its judgment which affirmed the judgment of the trial court maintaining an exception of prescription filed by third-party defendant Quinn Construction Company, Inc. (Hereinafter referred to as Quinn) and dismissing the third-party demand of Metairie Country Club (Hereinafter referred to as Metairie). Art. VII, Sec. 11, La.Const. of 1921; 256 La. 353, 236 So.2d 494; La.App., 234 So.2d 66.
Metairie entered into a contract with Quinn for repair, renovation, and building on the grounds of the Club. On November 17, 1965, Metairie entered into two contracts with William B. Harper, d/b/a Catalina Pools (Hereinafter referred to as Harper), for the construction of a swimming pool tank and for mechanical and equipment installation on the diving pool. After both contractors had commenced work, Quinn needed dirt to fill a low area on the premises, the need occurring at the same time as Harper was removing earth from the pool site. Robert LaMondre, superintendent for Quinn, and Harper agreed that Harper would furnish Quinn earth *267 from the excavation.[1] Alvin Wyatt, d/b/a Alvin Wyatt and Sons, furnished a bulldozer and an operator for the moving of the dirt.[2] On January 18, 1966, during the course of the operation, the bulldozer severed an underground electric conduit serving the Club. The damage was repaired by Metairie at a cost of $4,813.89 — the Court of Appeal recites the amount at $4,813.39, whereas, all pleadings show the amount to be $4,813.89. Metairie extrajudicially retained $4,813.89 from both Quinn and Harper, creating a fund which it has held since the incident of January 18, 1966.
On May 20, 1968, Harper filed suit against Metairie; he prayed for judgment for the alleged balance of $4,813.89 due on his contracts — the amount retained by Metairie. In answer to Harper’s petition, Metairie denied any indebtedness to Harper and filed the third-party demand against Quinn, with which we are herein concerned. It alleged:
“X.
“ * * * and as a cause of action against Quinn Construction Company, Inc., third-party defendant, defendant represents that it entered into the said contracts with William B. Harper for the completion of the said work in a proper manner. Defendant represents that the said work was not completed in a proper manner for the reasons hereinafter stated.
“XI.
“Because of the excavation for the work in question under the said contracts it became necessary to remove an amount of dirt and other materials which had accumulated on the premises. The plaintiff herein, William B. Harper, *269 entered into an agreement with Quinn Construction Company, Inc. which had been performing other work on the property, for the removal of the said dirt and other materials and in furtherance of that end retained the services of a bulldozer and operator from its owner. In seeking to perform the said work the bulldozer operator negligently damaged an underground electric conduit as the result of which it became necessary for the defendant Metairie Country Club to call upon the said plaintiff William B. Harper and the third-party defendant Quinn Construction Company, Inc. for the repair of the damage thereby caused.”
Quinn filed an answer to the third-party demand and incorporated therein a reconventional demand, set-off, and third-party petition. It enumerated the contract into which it had entered with Metairie and prayed for set-off amounts in the total sum of $8,723.04. Quinn also filed an exception of no right or cause of action, in reality an exception of prescription, to Metairie’s third-party petition, alleging, “ * * * the third party petition is grounded upon a tort action as alleged between Metairie Country Club and Quinn Construction Company, Inc. and that in connection with the exhibits filed as part of Article XIII of the third party complaint of Metairie Country Club, the damage alleged as a tort action against Quinn Construction Company, Inc. occurred in 1966 but that the third party complaint against Quinn Construction Company, Inc. was not filed until two years thereafter and that in accordance with Article 2315 of the Louisiana Civil Code, the action of Metairie Country Club as against Quinn Construction Company, Inc. has prescribed and there is no right or cause of action for the proceedings of Metairie Country Club against Quinn Construction Company, Inc. herein.”
Various incidental demands arose from the original lawsuit filed by Harper on May 20, 1968,[3] and exceptions of prescription were thereafter filed to the various third-party demands. The exceptions were heard on February 28, 1969, and the trial court rendered judgment, supra, on March 31, 1969, stating, “A consideration of the pleadings, oral argument and learned memoranda with which the Court was favored leads to the inescapable conclusion that the various third-party demands all sound in tort and are consequently prescribed by the one year period.”
Metairie, defendant and third-party plaintiff, appealed from that part of the trial court’s judgment which maintained Quinn’s plea of prescription. The Court of Appeal rendered judgment in favor of Quinn and stated: “The fact of the matter is that there was no contract between Wyatt and the Club. Generally, contrac *271 tual relief between an owner and a subcontractor requires the existence of a contract. * * * The alleged violation of duty by the Wyatt operator occasioned by his negligent act gave rise to an action ex delicto and within this frame of reference, the decision of the trial judge must be upheld.”
Herein,- Metairie urges that the district court erred in applying the one-year prescription liberandi causa to a third-party demand against a general contractor, under the written construction contract with the owner, instead of the ten-year prescription under Article 3544 of the Louisiana Civil Code. It further urges that the Court of Appeal erred in affirming the judgment of the district court.
Quinn contends that the decision of the trial court was properly founded in law upon Civil Code Article 3536, one-year liberative prescription, and conforms to the line of decisions enunciated in Brindell-Bruno, Inc. v. Farnsworth and Chambers Co., La.App., 154 So.2d 511.
We have studied the pleadings of record and find that they are based on the contracts of Metairie with Harper and Quinn. Although Louisiana no longer employs “The Theory of the Case” doctrine, we are constrained to find that this entire matter emanates from contract and is dependent upon the contracts involved for solution. See Comments to Art. 2164, LSA-C.C.P.
The allegations set forth in the pleadings of record and those found by the Court of Appeal, all being admitted in the briefs of relator and respondent, indicate that Alvin Wyatt, d/b/a Alvin Wyatt and Sons, was acting in the capacity of a subcontractor at the time the damage to the conduit occurred. Since there has been no hearing on the facts, we are unable to determine whether he was working for both Harper and Quinn or for just one of them. The relationship among Metairie, Harper, and Quinn did not necessitate a contract between Wyatt and Metairie for Wyatt to perform the bulldozing operation. It leaps to the mind that Wyatt’s agreement to perform the work of removing dirt was enmeshed with Harper’s and Quinn’s contracts with Metairie. Harper’s suit is against Metairie, and Metairie’s third-party petition is against Quinn. Metairie did not name Wyatt as a third-party defendant; it is self-evident that Metairie did not believe that it had an independent relationship with Wyatt.
In its third-party petition, Metairie herein alleged a breach of contract caused by the alleged tort of Wyatt’s employee. There is no legal reason why a breach of a contract by tort does not furnish ground for an action for breach of contract. See, Brooks v. Robinson, La.App., 163 So.2d 186; Illinois Central Railroad Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738; Creighton v. Karlin, La.App., 225 So.2d 288. We conclude that Metairie’s third-party petition did not merely allege *273 the commission of a tortious offense; it alleged breach of contract; the liberative prescription of one year, LSA-R.C.C. Art. 3536, is therefore not applicable. Under the facts of this case, as disclosed by the pleadings and the record before us, the liberative prescription of ten years, LSA-R. C.C. Art. 3544, applies to Metairie’s cause of action.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside. The matter is remanded to the trial court for trial of Metairie Country Club’s third-party petition in accordance with law and the views herein expressed. All costs of this Court to be paid by Quinn Construction Company, Inc.; all other costs to await final determination of the cause.

. In answer to interrogatories propounded by Metairie, Harper stated: “Robert LaMondre, Superintendent for Quinn Construction Company, Inc., for work being performed by Quinn Construction Company, Inc. at Metairie Country Club at tbe samo time work was being performed by plaintiff approached plaintiff and suggested that a bulldozer bo obtained to move dirt into a low area that had to be filled by Quinn Construction Company, Inc. on the grounds of defendant. This dirt would be obtained from the excavation for the swimming pool which was being constructed by plaintiff. Since plaintiff had to dispose of the dirt from the excavation for the swimming pool and since Quinn Construction Company, Inc. needed dirt, plaintiff agreed that if Quinn Construction Company, Inc. would obtain a bulldozer, it could use tbe dirt from the swimming pool excavation for fill. If plaintiff saved money by having to hire less trucks for the hauling of dirt from the swimming pool excavation as a result of the dirt being used for fill by Quinn Construction Company, Inc., the money saved would be given to Quinn Construction Company, Inc.”

. In an answer to a third-party demand, Alvin Wyatt and Coal Operators Casualty Company alleged that the machine owned by Wyatt and referred to in Quinn’s third-party demand was readied under a lease agreement by Wyatt to Quinn and Harper on a joint basis. They further alleged that the machine was solely under the control and direction of Quinn and Harper.

. On this review, we are not concerned with these demands.